## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CLARENCE MONTGOMERY**,

    Petitioner,

v.                                  Case No. 8:20-cv-3110-WFJ-CPT

**SECRETARY, DEPT. OF CORRECTIONS**,

    Respondent.

_____/

## <u>ORDER</u>

Before the Court is Clarence Montgomery's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Secretary, Florida Department of Corrections ("Respondent") has responded in opposition (Dkts. 10 & 13), and Petitioner has replied (Dkts. 11 & 14). Upon careful review, the Court finds that an evidentiary hearing is unnecessary and denies Petitioner any relief.

## BACKGROUND

On December 11, 2013, a jury found Petitioner guilty of manslaughter while carrying, displaying, or using a weapon. Dkt. 10-2 at 14. The state trial court subsequently adjudicated Petitioner guilty and sentenced him to thirty years' imprisonment. *Id.* at 19. The state appellate court *per curiam* affirmed Petitioner's conviction on December 12, 2014. *Id.* at 25–27.

On February 10, 2015, Petitioner filed a motion to modify his sentence—it was denied nine days later. *Id.* at 29–40. Petitioner filed an additional motion for postconviction relief on September 22, 2015, *id.* at 47, but it was similarly denied. *Id.* at 90. Thereafter, Petitioner filed an amended motion for postconviction relief that was denied as well. *Id.* at 92, 146.

On April 13, 2017, Petitioner filed a motion for postconviction relief based on newly discovered evidence. *Id.* at 148. Petitioner argued that Joyce Robinson's eye-witness account, which was not heard at Petitioner's trial, would have established that Petitioner "was only defending himself" and therefore necessitated relief. *Id.* at 149–53. The postconviction court granted Petitioner an evidentiary hearing on this claim on July 2, 2018. *Id.* at 159.

On May 2, 2019, following the evidentiary hearing, the postconviction court denied Petitioner's motion. *Id.* at 163. The court found that, "for a number of reasons[,] Ms. Robinson's testimony lacked credibility and, in important respects, conflicted with [Petitioner's] testimony at trial." *Id.* at 162. Petitioner filed an appeal, but the state appellate court *per curiam* affirmed on June 19, 2020. *Id.* at 169. The appellate court's mandate was issued on July 21, 2020. *Id.* at 171.

On December 30, 2020, Petitioner filed the instant Petition for Writ of Habeas Corpus. Dkt. 1. Petitioner argues that, in light of Joyce Robinson's testimony, he should be granted a new trial or, in the alternative, an evidentiary hearing. *Id.* at 18.

## LEGAL STANDARDS

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction:

> on a claim "that was adjudicated on the merits in the State court proceedings" unless the state court's decision was "(1)... contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2)... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002). Only if this Court determines that the state court's adjudication of Petitioner's claim was unreasonable under § 2254(d), must a *de novo* review of the record be undertaken. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009).

## DISCUSSION

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1). Time begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The clock stops running for the "time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" *Id.* §

2244(d)(2). Here, Petitioner concedes that the instant Petition is untimely. Dkt. 14 at 1. He nevertheless "contends that his untimeliness should be excused because of the actual-innocence exception." *Id.*

Under the actual innocence exception, a court may "consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse 'a fundamental miscarriage of justice' because it would require than an individual who is actually innocent remain imprisoned." *San Martin v. McNeil*, 633 F.3d 1257, 1267–68 (11th Cir. 2011) (citations omitted). This exception is "exceedingly narrow in scope" and requires a petitioner to "demonstrate that he is factually innocent rather than legally innocent." *Id.* (citations and internal quotations omitted). In order to do so, a petitioner must "raise new facts that cast sufficient doubt upon [his] guilt to undermine confidence in the result of a trial without the assurance that the trial was untainted by constitutional error." *Sibley v. Culliver*, 377 F.3d 1196, 1205 (11th Cir. 2004) (citations and internal quotations omitted). Put otherwise, "a petitioner must show that it is more likely than not that no reasonable juror would have convicted him of the underlying offense" in light of new facts. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations and internal quotations omitted). "To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* (cleaned up) (citations omitted).

Petitioner has failed to meet his burden under the actual innocence exception. To begin with, the reliability and import of Ms. Robinson's testimony (the only new evidence presented by Petitioner) was extensively considered by the state postconviction court. The postconviction court determined the following:

> The Court finds that Ms. Robinson's testimony at trial is not of such a nature that it would probably produce an acquittal on retrial. The Court finds that for a number of reasons Ms. Robinson's testimony lacked credibility and, in important respects, conflicted with the Defendant's testimony at trial.
>
> Ms. Robinson testified at the evidentiary hearing that she observed the Defendant and the victim engaged in an argument and that the victim hit the Defendant in the head with a silver in color garbage can. After being hit in the head, she testified that the Defendant immediately stabbed the victim. She testified that she left the scene shortly thereafter and did not see the Defendant return to his residence. Her testimony is significantly at odds with that of the Defendant's testimony at trial.
>
> At trial, the Defendant testified that he became engaged in an altercation with the victim during which the victim hit the Defendant in the head with a garbage can. The Defendant testified he was dazed and went inside his residence to sit down. He testified that he realized he had left his cigarettes outside and returned outside to retrieve them. He encountered the victim again who was attempting to block his path. He testified that he picked up a knife from the ground when he saw the victim's hand on another trash can. He testified that he attempted to go around the victim when the victim jumped in front of him resulting in the knife stabbing the victim. A knife with the victim's DNA on it was found in the Defendant's residence.
>
> Clearly the Defendant's testimony indicates his return to his residence after being hit on the head with the trash can, whereas Ms. Robinson's testimony is that the Defendant immediately stabbed the victim after being hit in the head with the trash can. It is difficult to see how Ms. Robinson's testimony would have been any benefit to the Defendant.

Additionally, Ms. Robinson testified that the victim used a silver metal trash can while the Defendant and photographs of the area indicate only a rubber trash could have been used in the alleged assault. An autopsy of the victim indicated that he was highly intoxicated at the time of the incident and may have been impaired in any effort to hold a trash can over his head in an effort to strike the Defendant. Additionally, the trash cans found at the scene apparently contained trash; however, no trash was found on the ground in the vicinity of the altercation as would have been apparent if a trash can was used in the manner described.

Ms. Robinson's credibility is also questionable in other regards. It appears she was a longtime acquaintance of the Defendant and his sisters. His sisters remained in contact with Ms. Robinson after the incident and requested that she sign a letter concerning what she had witnessed. During this process she allegedly provided two letters concerning the Defendant being hit over the head with a trash can. However, at the evidentiary hearing Ms. Robinson indicated that the first letter submitted did not contain her handwriting or, apparently, her signature.

Dkt. 10-2 at 163.

This was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. A comparison of the trial transcript containing Petitioner's testimony and the evidentiary hearing transcript containing Ms. Robinson's testimony evince the exact inconsistencies discussed by the postconviction court. *See* Dkt. 13-2 at 366–424, 661–710. The state postconviction court's findings as to Ms. Robinson's general credibility are equally supported. Given this, the Court cannot say that Petitioner has presented "evidence of innocence so strong that [the Court] cannot have confidence in the outcome of the trial[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). To do so would be to afford no deference

to the postconviction court's factual findings and to ignore the record itself. *See Wood*, 558 U.S. at 301 (finding that, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination").

The Court also notes that Ms. Robinson's evidentiary hearing testimony conflicts with other witness accounts that the state did not elicit at trial. For instance, while Ms. Robinson testified that the victim confronted Petitioner, that the victim struck Petitioner with a metal trash can, and that the victim was the only intoxicated party, Tony Brooks testified in his deposition that Petitioner confronted the victim while intoxicated and that the victim hit Petitioner with a plastic trash can to "keep [Petitioner] off of him." Dkt. 13-2 at 19–37. Had Ms. Robinson testified at trial, this too could have been used in rebuttal to undermine her credibility. It also would have further undermined Petitioner's self-defense argument that the jury rejected. In sum, Ms. Robinson's testimony offers little evidence of innocence, if any at all. It follows that Petitioner cannot pass through the actual innocence "gateway and argue the merits of his underlying claims." *Id.* Petitioner is entitled to no relief.

In light of the foregoing analysis, an evidentiary hearing in this matter is unnecessary. "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotations and citations omitted).

Notwithstanding, "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted). Here, Petitioner's claim of actual innocence based on newly discovered evidence is affirmatively contradicted by the record. Ms. Robinson's testimony is unreliable and overwhelmingly at odds with the other evidence contained in the record. As a result, summary dismissal is appropriate. *See Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (finding that "a district court faced with a § 2255 motion may make an order for its summary dismissal [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief"). Petitioner's Petition is untimely, and he has demonstrated no entitlement to an exception.

Petitioner is similarly not entitled to a certificate of appealability ("COA"). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the

merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

(2) A certificate of appealability and leave to appeal *in forma pauperis* is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Respondent and close this case.

**DONE AND ORDERED** at Tampa, Florida, on July 13, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, *pro se*

10